THE RUDOLPH WURLITZER MANUFACTURING COMPANY, A CORPORATION, PLAINTIFF-APPELLANT, v. UNITED REALTY AND AMUSEMENT COMPANY, DEFENDANT-RESPONDENT.

Argued March 11, 1915—Decided June 14, 1915.

Section 48 of the Sales act (*Comp. Stat.*, *p.* 4658) declares, among other things, that a buyer is deemed to have accepted goods when goods are delivered to him and he does any act in relation to them inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he rejected them. Appellant sold and delivered a musical instrument to respondent for a part payment in cash, and respondent after delivery made five weekly payments in accordance with the contract of sale, and also used the musical instrument in its business. *Held*, that such evidence was sufficient to justify the inference that there had been an acceptance of the musical instrument by respondent, and that this was a question of fact for the trial judge, sitting without a jury, to decide.

On appeal from the Supreme Court.

For the appellant, *Frank Koch*, *J. J. Kramer* and *Gilbert Collins*.

For the respondent, *Arthur F. Egner* and *Robert H. McCarter*.

The opinion of the court was delivered by

KALISCH, J. This case was tried by the judge of the First Judicial District Court of Essex County, sitting without a jury. The outcome of the controversy depended upon the solution of the question whether there had been an acceptance of a musical instrument sold and delivered by the plaintiff to the defendant. The trial judge found as a fact from the testimony, that there had been such acceptance and accordingly gave judgment for plaintiff. From this judgment the defendant-respondent appealed to the Supreme Court, which court held that there was no evidence of acceptance by respondent of the musical instrument, within the declared terms of section 48 of the Sales act (4 *Comp. Stat., p.* 4658), and therefore reversed the judgment.

This section declares, among other things, that a buyer is deemed to have accepted goods, when goods are delivered to him, and he does any act in relation to them inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them.

If, therefore, there was any testimony, no matter how slight, which permitted the trial judge to draw the inference that there had been an acceptance within the meaning of this section, then he could properly find that there had been an acceptance.

This requires an examination of the proven facts, which are briefly these: The respondent owned a theatre in Montclair. It entered into an agreement in writing with the appellant, whereby the appellant agreed to sell to the respondent a Wurlitzer unit orchestra, style 3, and to install the same in the respondent's theatre for $10,000, to be paid for by the defendant, as follows: $500 upon signing the contract; $500 upon the date the instrument is completed and handed over to the respondent; and the balance, $9,000, in ninety equal weekly payments of $100 each, with six per cent. interest, evidenced by promissory notes of the respondent and secured by mortgage, one week after the installation of the instrument.

One of the terms of the contract was that the title of the instrument was not to vest in the respondent until it was fully paid for. By further terms of the contract the appellant had the right in case the respondent defaulted in the payment of any part of the purchase price when due to enter the premises and take possession of the instrument and might retain all moneys paid, or at the option of the appellant upon default of payment of the purchase price or any part thereof, as provided in the agreement, the balance then remaining unpaid to become due and payable.

By another clause of the contract the appellant undertook to replace or repair any parts of the instrument that may fail through inferior workmanship or material during the two years from the date of the making of the contract.

The respondent built a pit of concrete, about twelve feet deep and used a composition known as "comopolite" to make the pit extra waterproof, for the installation of the orchestra.

Water came into the pit and injured the instrument and interfered with its working properly, which the respondent claims was due to the negligence of a workman of the appellant, who, it is claimed, cut away a portion of the comopolite lining.

Granting this to be so and further that the respondent was unable to recoup in damages beyond the sum of $500, because the appellant's action was in the District Court whose jurisdiction is limited to that sum, the respondent is not without its remedy for damages against the appellant for its failure to install the orchestra in a workmanlike and artistic manner, according to its obligation under the contract, and for negligently injuring the instrument.

From the testimony it appears that the respondent paid appellant $500 on the execution of the contract.

The orchestra was completed and installed in the pit prepared for it by the respondent on the 15th of September, 1913, at which time the additional sum of $500 was paid by respondent to appellant.

Thereafter, the respondent paid appellant five weekly installments of $100 each, until October 27th, 1913, at which

time another installment fell due, which the respondent failed to pay, and it has paid nothing since.

There is also testimony to the effect that the respondent was making use of the orchestra and had been using it, in its business, up to the time of the trial, December 17th, 1914.

We think, therefore, that there was evidence from which the trial judge might infer that there had been an acceptance of the orchestra.

The fact that five weekly payments of $100 each were made, coupled with the circumstance that the respondent is still continuing to make use of the instrument, is at least some evidence of acceptance, and as that was a question of fact for the trial judge to decide, it was not, according to the settled law of this state, properly reviewable by the Supreme Court.

The judgment of the Supreme Court reversing the judgment of the District Court will be reversed, and the judgment of the District Court will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, PARKER, BLACK, JJ.  4.

*For reversal*—THE CHANCELLOR, SWAYZE, KALISCH, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, JJ.  7.